IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH LAURENSAU,                )
                     Plaintiff,  )
                                 )
    vs.                          ) Civil Action No. 12-623
                                 ) Magistrate Judge Maureen P. Kelly
CHARLES PLUCK *COI;* RONALD      )
YOURKIN*;* LYLE POZIVIAN,*COI;*  )
WILLIAM SHRADER *COIII;* GARRET  )
FINLEY *COI*; GERALD HONSAUER;   )
ROBERT NELSON; ANTHONY KULIK*;*  )
PAUL WALKER; DR. JINN; DR.       )
CELESTE KOSTLENIK; DR. MICHELLE  )
LUCAS; DR. ROBERT KRAK;          ) Re: ECF Nos. 39, 43
FERNANDO NUNEZ,                  )
                     Defendants. )

## OPINION

**KELLY, Magistrate Judge**

Plaintiff Joseph Laurensau ("Plaintiff") is a prisoner in the custody of the Pennsylvania

Department of Corrections ("DOC"), who is currently incarcerated at the State Correctional

Institution ("SCI") at Graterford.  Plaintiff brings this civil rights suit pursuant to 42 U.S.C. §

1983 ("Section 1983"), alleging that Defendants Charles Pluck ("Pluck"), Ronald Yourkin

("Yourkin"), Lyle Poziviak ("Poziviak"), William Shrader ("Shrader"), Garret Finley ("Finley"),

Gerald Honsauer ("Honsauer"), Robert Nelson ("Nelson"), Anthony Kulik ("Kulik"), Paul

Walker ("Walker"), Dr. Celeste Kostlenik ("Kostlenik"), Dr. Robert Krak ("Krak"), Fernando

Nunez ("Nunez") (collectively, "the DOC Defendants"), Dr. Jinn ("Jinn") and Dr. Michelle

Lucas ("Lucas") (collectively, "the Medical Defendants"), violated his rights provided by the

First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution while he was

incarcerated at SCI Greene in 2009 and 2010.

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint submitted on behalf of the Medical Defendants, ECF No. 39, and a partial Motion to Dismiss Amended Complaint submitted on behalf of the DOC Defendants.  ECF No. 43.  For the reasons that follow, the Medical Defendant's Motion to Dismiss Plaintiff's Amended Complaint will be granted, and the DOC Defendants partial Motion to Dismiss Amended Complaint, treated as a Motion for Summary Judgment with respect to the issue of exhaustion, will granted as well.

## I.      PROCEDURAL BACKGROUND

Plaintiff initiated this suit on May 10, 2012, by filing a Motion for Leave to Proceed In Forma Pauperis.  ECF No. 1.  The Motion for Leave to Proceed In Forma Pauperis was granted on October 16, 2012, and the Complaint, which Plaintiff submitted with the Motion, was filed on that same date.  ECF Nos. 6, 7.

On January 7, 2013, the DOC Defendants filed a Motion for More Definite Statement arguing that the Complaint failed to comply with Federal Rules of Civil Procedure 8 and 10 because it was simply a ten page rambling, disjointed and often repetitive commentary with no enumerated Counts and no numbered paragraphs.  ECF Nos. 28, 29.  This Court subsequently ordered Plaintiff to file a response to the DOC Defendants' Motion for More Definite Statement and on January 29, 2013, rather than respond to the Motion, Plaintiff filed an Amended Complaint.  ECF No. 33.  Although the Amended Complaint suffers from many of the same deficiencies as the original Complaint, it appears that Plaintiff purports to bring claims against the Medical Defendants for violating his rights provided by the Eighth and Fourteenth Amendments to the United States Constitution relative to the medical treatment he was provided; retaliation claims in violation of his rights provided by the First Amendment against Defendants Pluck, Yourkin, Poziviak, Shrader, Finley, Nelson, and Kulik; claims for violations of the Eighth

and Fourteenth Amendments regarding conditions of confinement, excessive force, and lack of

medical treatment against Defendants Pluck, Yourkin, Poziviak, Shrader, Finley, Honsauer,

Nelson, Kulik, Walker Kostlenik, Krak and Nunez; and Fourteenth Amendment claims relative

to nine allegedly false misconducts he received against Defendants Pluck, Yourkin, Shrader,

Poziviak, Nelson, Kulik, Finley, Honsauer and Nunez.

The Medical Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint,

ECF No. 39, on February 27, 2013, and the Motion to Dismiss Amended Complaint submitted

on behalf of the DOC Defendants was filed on March 5, 2013.  ECF No. 43.  Plaintiff filed a

Response to the DOC Defendants' Motion on March 21, 2013, and a Response to the Medical

Defendants' Motion on March 27, 2013.  ECF Nos. 43, 47.  As such, both Motions to Dismiss

are ripe for review.

## II.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in

the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not

accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint.  See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d

126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level."  Id., citing Papasan v. Allain, 478 U.S. 265,

286 (1986).  Indeed, the United States Supreme Court has held that a complaint is properly

dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim

to relief that is plausible on its face," id. at 570, or where the factual content does not allow the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation

of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts

suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation

that discovery will reveal evidence of the necessary element[s] of his claim").

## III.    DISCUSSION

Plaintiff has brought his claims pursuant to Section 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the

Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v.

Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145

n. 3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the

plaintiff must allege facts from which it could be inferred that "the defendant, acting under color

of state law, deprived him or her of a right secured by the Constitution or the laws of the United

States."  Id. at 423.

Here, Plaintiff alleges that Defendants violated his rights provided by the First, Eighth and Fourteenth Amendments to the Constitution.[1]

## A.      The Medical Defendants' Motion to Dismiss

### 1.      Statute of Limitations

The Medical Defendants first argue that most, if not all, of the claims Plaintiff has brought against Defendant Jinn should be dismissed because they are barred by the applicable statute of limitations.

Congress did not specify a statute of limitations for actions arising under Section 1983. Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in*, Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. April 28, 2009).  Courts, therefore, are to consider Section 1983 actions as tort actions and borrow the statute of limitations for personal injury or tort actions from the appropriate state.  Wilson v. Garcia, 471 U.S. at 278.  The state statute of limitations for personal injury/tort actions in Pennsylvania is two years.  42 Pa. C.S.A. §  5524. See Smith v. Holtz, 87 F.3d 108, 111 n.2 (3d Cir. 1996).  As such, for Section 1983 actions brought in the federal courts located within the Commonwealth of Pennsylvania, the appropriate limitations period is two years.  Id.

The statute of limitations requires that a complaint be filed within its time limits from the time a cause of action accrues.  See Sprint Communications Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996).  The date of accrual for claims brought under Section 1983 is governed by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).  Under federal law "'the limitations period begins to run from the

---

[1] Plaintiff has also alleged that many of the DOC Defendants violated his rights provided by the Fifth Amendment. The due process clause of the Fifth Amendment, however, only applies to federal officials and not to state officials. See Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013), *citing* Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983).  Because the Defendants in this case are state officials, Plaintiff's Fifth Amendment claims will be dismissed with prejudice.

time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'"  Id., *quoting* Genty v. Resolution Trust Corp, 937 F.2d 899, 909 (3d Cir. 1991).  See Wallace v. Kato, 549 U.S. at 388 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action . . . that is, when the plaintiff can file suit and obtain relief") (internal quotations and citations omitted).

Defendants contend that because Plaintiff's original Complaint was not filed until October 16, 2012, that any claims based on events that occurred more than two years earlier, or prior to October 16, 2010, are untimely and barred by the statute of limitations.  Defendants' argument is misplaced.

Although the Complaint in this matter was not filed until October 16, 2012, the United States Court of Appeals for the Third Circuit has held that where a pro se plaintiff submits a complaint along with a request to proceed in forma pauperis, the complaint is deemed to be constructively filed as of the date it is received by the clerk, even though it is not formally filed until the court has granted the plaintiff leave to proceed in forma paurperis.  McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996).  See Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 656-57 (E.D. Pa. 2010), *quoting* Salahuddin v. Milligan, 592 F. Supp. 660, 661 (S.D.N.Y. 1984), *aff'd without op.*, 767 F.2d 908 (2d Cir. 1985) ("where a plaintiff 'is pro se and sends his complaint to the court, and the complaint is not filed until a later date due to consideration of plaintiff's application to proceed in forma pauperis, the action is deemed commenced for purposes of the statute of limitations upon receipt by the court of plaintiff's complaint, and not when it is filed'").

Because it is clear from the record in this case that Plaintiff submitted the Complaint to the Clerk of Court on May 10, 2012, in conjunction with a Motion for Leave to Proceed In

Forma Pauperis, the Complaint is deemed filed as of that date.  <u>See</u> ECF No. 1.  Thus, only those

claims brought against Defendant Jinn that are based on actions taken prior to May 10, 2010 --

not October 16, 2010 -- are barred by the two year statute of limitations.  Although it is not

entirely clear from the Amended Complaint when Jinn engaged in the conduct complained of, to

the extent that the conduct occurred prior to May 10, 2010, those claims are properly dismissed.

<u>See</u> ECF No. 33, ¶¶ 37-41.

**2.      Exhaustion of Administrative Remedies**

The Medical Defendants also argue that the claims brought against them should be

dismissed because Plaintiff has failed to establish in the Amended Complaint that he exhausted

all available administrative remedies with respect to those claims.  Defendants' argument is

again misplaced.

Although the Prison Litigation Reform Act ("PLRA") requires a prisoner filing a Section

1983 action to exhaust all administrative remedies before filing a claim in federal court,[2] <u>Spruill</u>

<u>v. Gillis</u>, 372 F.3d 218, 228 (3d Cir. 2004), failure to exhaust administrative remedies is an

affirmative defense and, hence, the burden lies with party asserting it.  <u>Karpiel v. Ogg, Cordes,</u>

<u>Murphy & Ignelzi, LLP</u>, 297 F. App'x 192, 193 (3d Cir. 2008) ("[e]xhaustion is an affirmative

defense and, accordingly, the burden is on [the defendant] to demonstrate that [the plaintiff]

failed to exhaust her administrative remedies . . .").  <u>See Jones v. Bock</u>, 549 U.S. 199, 211, 215

(2007) (rejecting the Sixth Circuit's approach which "places the burden of pleading exhaustion in

a case covered by the PLRA on the prisoner").  A plaintiff therefore need not plead exhaustion in

---

[2] Specifically, the PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this Title, or any
> other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such
> administrative remedies as area available are exhausted.

42 U.S.C.1997e(a).

the complaint and a defendant may only assert the defense in a motion to dismiss filed pursuant to Rule 12(b)(6), if it is clear from the face of the complaint that the plaintiff has failed to exhaust.  See Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face") (citations omitted); Boyd v. Sherrer, 2007 WL 2261553, at *2–3 (D.N.J. Aug. 3, 2007).

Accordingly, the fact that Plaintiff has not pled exhaustion in the Amended Complaint or mentioned utilizing the DOC grievance process is of no moment and does not provide the basis for finding that he failed to do so.  To conclude otherwise would place the burden of establishing exhaustion on Plaintiff -- an approach that the United States Supreme Court and the United States Court of Appeals for the Third Circuit has rejected.  Thus, because it is not clear from the face of the Amended Complaint that Plaintiff has, in fact, failed to exhaust administrative remedies, the burden of so establishing remains with Medical Defendants and does not provide the basis for dismissing Plaintiff's claims brought against them.

### 3.    Fourteenth Amendment Claims

Plaintiff alleges in the Amended Complaint that the conduct of Defendants Lucas and Jinn violated his rights provided by both the Eighth and Fourteenth Amendments.  Defendants argue that Plaintiff's claim brought under the Fourteenth Amendment should be dismissed because it is duplicative of his Eighth Amendment claim.  The Court agrees.

> Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule."  *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) . . . .

Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010).  Observing that the

plaintiff's allegations "fit squarely within the Eighth Amendment's prohibition on cruel and

unusual punishment," and that the practical effect of analyzing the plaintiff's Fourteenth

Amendment claims under the Eighth Amendment standard would be to replicate the analysis of

his Eighth Amendment claims, the Court in Betts, consequently, held that the plaintiff's due

process claims were foreclosed by the "more-specific-provision rule." Id. at 261.  See Albright

v. Oliver, 510 U.S. 266, 273 (1994) ("where a particular Amendment provides an explicit textual

source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims")(citation omitted); Ordonez v. Yost, 289 F. App'x 553, 555 (3d Cir.

2008) ("[a]ppellant's due process clause is identical to his Eighth Amendment claim; he must

bring the claim pursuant to the more explicit constitutional amendment").

Here, Plaintiff's claims that the Medical Defendants violated his due process rights

provided for by the Fourteenth Amendment by failing to provide him with adequate medical care

are predicated on the same facts as his Eighth Amendment claims.  Under Betts, these Fourteenth

Amendment claims are foreclosed under the "more-specific-provision rule" and, thus, are

properly dismissed with prejudice.  See Scutella v. City of Erie Bureau of Police, 2012 WL

1788136, at *4 (W.D. Pa. April 20, 2012); Rosado v. Virgil, 2011 WL 4527067, at *6 (W.D. Pa.

Sept. 28, 2011); Navolio v. Lawrence Cnty., 2010 WL 522331, at *9 (W.D. Pa. Feb. 9, 2010),

aff'd, 406 F. App'x 619 (3d Cir. 2011).

### 4.      Eighth Amendment Claims

The Eighth Amendment's prohibition against cruel and unusual punishment requires

prison officials to provide basic medical treatment to those whom it has incarcerated.  It therefore

has been held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d at 235.

To constitute a serious medical need, "[t]he detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). In addition, "the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id. quoting Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991). See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (A prison official violates the Eighth Amendment when he disregards an excessive risk to inmate health or safety). Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197. "[T]he official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."
Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. at 837.  Allegations of negligence or medical malpractice, however, do not amount to cruel and unusual punishment.  See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable).

In this case, with respect to Defendant Jinn, Plaintiff alleges only that Jinn denied Plaintiff "medical care for an eye exam and prescription eyeglasses," and that Jinn allowed Plaintiff to be served Behavior Modified Meals ("BMMs") knowing that Plaintiff was allergic to the carrots contained therein.  These assertions fall short of establishing that Plaintiff suffers from a serious medical need or that Jinn was deliberately indifferent to that need.

Indeed, Plaintiff has not indicated what, if anything, is wrong with his eyes and/or his vision, that he needs prescription glasses or that he unable to see or function without them.  The mere fact that Plaintiff has not been given an eye exam does not by itself establish either a serious medical need or that Jinn was aware of the need for treatment.  Nor does it suggest that a substantial risk of harm existed or that Jinn was aware of such harm.  Plaintiff therefore has failed to raise his right to relief in this regard above the speculative level.

Further, the Court notes that Plaintiff's purported allergy to carrots is seemingly contradicted by the Inmate Religious Accommodation Request Form he submitted in February of 2009 in which he complained that the Kosher Diet he was receiving was inadequate and requested a diet that included broccoli, peanut butter, cheese, fruit *and carrots*.  See Civil Action No. 10-1054, ECF No. 30-1.  Moreover, the fact that Plaintiff continues to be served BMMs that contain carrots does not by itself suggest that Jinn is deliberately indifferent to a serious medical need.  Plaintiff has not alleged how often he receives the BMM, whether he receives any other

food along with the BMM, how severe his allergy is, or whether consuming the BMM exposes him to a substantial risk of serious harm.  Nor has Plaintiff alleged that he has otherwise suffered the effects of a prolonged and nutritionally inadequate diet because he is unable to eat the BMMs.  See Gregory v. Danberg, 2011 WL 4480445, at *5-6 (D. Del. Sept.  23, 2011), *reconsideration denied*, 2012 WL 1133682 (D. Del. Mar. 28, 2012) (finding that the plaintiff's testimony that the food portions were small insufficient to overcome summary judgment where there was no evidence that they were nutritionally inadequate); Brown v. Martinez, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007) ("[i]t is not enough for a prisoner to allege that his food portions were inadequate. There must be more in the way of evidence of deleterious impact of a prolonged deficient diet").  Under these circumstances, it cannot be said that Jinn has deliberately disregarded an excessive risk to Plaintiff's health or safety.

With respect to Defendant Lucas, Plaintiff alleges only that when he was seen by Lucas on December 9, 2010, at which time Plaintiff complained of being malnourished because he allegedly missed 100 meals in six months, she did not weigh Plaintiff or prescribe him vitamins or Ensure.  Although it is unclear from the Amended Complaint whether Plaintiff missed 100 meals because he was unable to eat the BMMs or because he went on a self-imposed hunger strike, under either scenario it would appear that there were approximately 440 other meals that Plaintiff received and presumably consumed during that same six months.  As such, Plaintiff's self-diagnosis of being malnourished is speculative at best and does not provide the basis for finding that Plaintiff suffered from a serious medical need.  Dr. Lucas' alleged failure to provide Plaintiff with vitamins or Ensure therefore does not evidence deliberate indifference to a serious medical need or that she disregarded a substantial risk of harm.

Finally, to the extent that Plaintiff has alleged that both Defendants Jinn and Lucas violated his rights by charging him a $5.00 medical co-pay, the United States Court of Appeals for the Third Circuit has specifically held that "[i]f a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"  Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997), quoting Helling v. McKinney, 509 U.S. 25, 32 (1993).  See Stankowski v. Farley, 487 F. Supp. 2d 543, 556 (M.D. Pa. 2007).  Plaintiff, therefore, has failed to state an Eighth Amendment claim against either Defendant Jinn or Defendant Lucas and the Medical Defendants' Motion to Dismiss is properly granted.

**B.      The DOC Defendants' Motion to Dismiss**

**1.      Statute of Limitations**

As previously discussed, Plaintiff initiated this action on May 10, 2012, by filing a Motion for Leave to Proceed In Forma Pauperis to which he attached a copy of the Complaint. See ECF No. 1.  Noting that Plaintiff failed to include a certified copy of his inmate account statement, the DOC Defendants argue that the Complaint should not be considered filed as of May 8, 2012,[3] but rather should be deemed filed on October 16, 2012, when the Court granted Plaintiff's Motion for Leave to Proceed In Forma Pauperis and the Complaint was actually filed.  Alternatively, Defendants argue that the Complaint should be deemed filed as of September 5, 2012 -- the date that Plaintiff mailed his inmate account statement.

Defendants, however, cite no authority for their position.  Moreover, as previously discussed, the United States Court of Appeals for the Third Circuit has held that "a complaint is deemed 'filed' for statute of limitations purposes when actually or constructively received by the court clerk -- despite the untimely payment of the filing fee."  McDowell v. Delaware State

---

[3] The postmark on the envelope containing Plaintiff's Motion for Leave to Proceed In Forma Pauperis and the Complaint was May, 8, 2012; the Motion for Leave to Proceed In Forma Pauperis, however, was not filed until May 10, 2012.  See ECF No. 1.

Police, 88 F.3d at 191, *citing* Rodgers ex rel. Jones v. Bowen, 790 F.2d 1550, 1551–52 (11th Cir. 1986). See Pendergrass v. Gray, 2006 WL 3165007, at *1 (E.D. Pa. Oct. 30, 2006). Thus, notwithstanding the fact that Plaintiff failed to submit his inmate accounting statement with his Motion for Leave to Proceed In Forma Pauperis, the Complaint was received by the clerk on May 10, 2012, and is properly deemed filed as of that date despite the delay it caused in granting Plaintiff's Motion for Leave to Proceed In Forma Pauperis. Accordingly, the only claims barred by the two year statute of limitations are those that Plaintiff has brought against Defendant Finley for allegedly hiring another inmate to "grind" Plaintiff up in March of 2010, and for issuing a false misconduct against Plaintiff in April of 2010. See ECF No. 33, ¶¶ 65-67.

## 2.      Exhaustion of Administrative Remedies

Plaintiff alleges in the Amended Complaint that between July and November 2010 Defendants Pluck, Yourkin, Poziviak, Shrader, Finley, Honsaur, Nelson and Kulik filed nine "bogus" misconducts against Plaintiff: Misconduct Nos. B 268282; B 268296; B 268225; B 268222; B 268223; B 326117; A 563591; A 563581; A 318757. See ECF No. 33, ¶¶ 3, 9, 14, 17, 22, 27, 49, 52, 53, 56, 57, 63, 67, 75. Defendants argue that because Plaintiff failed to appeal any of the misconducts to final review that he has failed to exhaust his administrative remedies with respect to his "misconduct-related claims," and those claims therefore should be dismissed. ECF No. 44, p. 9.

As previously discussed, the PLRA requires a prisoner filing a Section 1983 action to exhaust all administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997(e)(a). See Spruill v. Gillis, 372 F.3d at 228. In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006). The DOC's

14

Grievance System Policy, DC–ADM 804, sets out a three-step grievance and appeals process. An inmate is first required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review."  Spruill v. Gillis, 372 F.3d at 232, 233.  After the initial review by a grievance officer, the inmate has the opportunity to appeal to the Facility Administrator for a second level of review.  Id. at p. 232.  Finally, an appeal to the Secretary's Office of Inmate Grievances and Appeals is available.  Id.

Issues arising during prison misconduct proceedings, however, are expressly excluded from grievance review under DC-ADM 804, and must be appealed through DC-ADM 801, which applies to Inmate Discipline.  Wright v. State Corr. Inst. at Greene, 2009 WL 2581665, at *4 (W.D. Pa. Aug. 20, 2009).  In accordance with DC-ADM 801, an inmate who has been found guilty on a misconduct charge may, within fifteen days of the hearing, file an appeal to the Program Review Committee ("PRC"). Within seven days of the PRC's decision, the inmate may file a second level appeal to the Superintendent.  Finally, the inmate has one last avenue of appeal to the Chief Hearing Examiner.  Hagan v. Chambers, 2010 WL 4812973, at *18 (M.D. Pa. Nov. 19, 2010).

The United States Court of Appeals for the Third Circuit has not addressed whether, or to what extent, the misconduct appeals process set forth in DC-ADM 801 is relevant to the exhaustion issue.  See Verbanik v. Harlow, 441 F. App'x 931, 934 (3d Cir. 2011) ("[w]e have not yet decided whether or under what circumstances a prisoner may exhaust administrative remedies in the course of misconduct proceedings under DC–ADM 801. . . . We decline to do so on this record"); Wilson v. Unknown Budgeon, 248 F. App'x 348, 350 n.2 (3d Cir. 2007) (declining to address "the more difficult exhaustion of administrative remedies question presented" where the plaintiff's grievance in which he raised his First Amendment retaliation

claim was returned by prison officials unadjudicated on the grounds that there were "ongoing disciplinary proceedings"); Ray v. Kertes, 285 F.3d 287, 297–98 (3d Cir. 2002) (noting that the Inmate Discipline Policy is distinct from the Inmate Grievance Review System and declining to address whether a Pennsylvania inmate may satisfy the exhaustion requirement in misconduct proceedings).

Several district courts within the Third Circuit, however, have found that because the grievance procedure set forth in DC-ADM 804 is not a remedy available to inmates seeking to challenge misconducts, they must pursue the remedies available under DC-ADM 801 in order to satisfy the exhaustion requirements of the PLRA.  See Hagan v. Chambers, 2010 WL 4812973, at *18 (dismissing the plaintiff's claim where he failed to pursue an appeal of the misconduct); Wilson v. Budgeon, 2006 WL 1410067, at *4 (M.D. Pa. May 19, 2006) (finding that the Magistrate Judge properly determined that the plaintiff's constitutional claims were barred by the exhaustion requirements of the PLRA where he failed to exhaust the administrative remedies available through DC-ADM 801); Bartelli v. Lewis, 2005 WL 2300362, at *5 (M.D. Pa. Sept. 9, 2005), Report and Recommendation adopted by, 2005 WL 2406048 (M.D. Pa. Sept. 29, 2005) (finding that "the Plaintiff procedurally defaulted exhaustion concerning his claim one since he failed to comply with the requirements of DC-ADM 801").  See also Lane v. Zirkle, 2012 WL 6860255, at *6 (W.D. Pa. Dec. 21, 2012), Report and Recommendation adopted by, 2013 WL 164488 (W.D. Pa. Jan. 15, 2013) (dismissing the plaintiff's claims for failure to exhaust administrative remedies where none of the grounds raised in his appeal from the misconducts related to the plaintiff's claims before the court and were insufficient to place the defendants on notice of the plaintiff's claims).

Defendants in the instant case have submitted copies of the misconducts referenced by Plaintiff in the Amended Complaint as well as the relevant appeals that Plaintiff pursued. ECF Nos. 43-1 to 43-9. In addition, without complaint from Plaintiff, Defendants have submitted a Declaration from a Hearing Examiner Supervisor of the Office of Chief Hearing Examiner, in which he states that Plaintiff failed to appeal any of the misconducts at issue to final review. ECF No. 43-10. It therefore appears that Plaintiff has failed to exhaust the administrative remedies available to him with respect to his misconduct related claims and they too are properly dismissed.[4]

Alternatively, even if Plaintiff did exhaust his administrative remedies, the Court notes that a false misconduct charge does not itself qualify as an Eighth Amendment violation. Booth v. Pence, 354 F. Supp. 2d 553, 559 (E.D. Pa. 2005), aff'd, 141 F. App'x 66 (3d Cir. 2005). Nor is a due process claim stated when a prisoner alleges that misconduct charges were fabricated. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002); Gravley v. Beard, 2010 WL 3829370, at *4 (W.D. Pa. Aug. 31, 2010), Report and Recommendation adopted by, 2010 WL 3829434 (W.D. Pa. Sept. 23, 2010). Moreover, the requirements of due process are satisfied if some evidence supports the decision to sanction a prisoner. Superintendent v. Hill, 472 U.S. 445, 455 (1985). An unfavorable decision, standing alone, is not a denial of due process. Griffin

---

[4] Although normally in addressing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court's review is confined to the four corners of the complaint, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring). Because Plaintiff's claims are based, in part, on the misconducts he was issued, they are properly considered by the Court. The Court has also considered the Hearing Examiner Supervisor's Declaration and, as requested by the DOC Defendants in the alternative, has treated Motion as one for Summary Judgment with respect to the issue of exhaustion. See ECF No. 43, p. 2. See also McDaniels v. New Jersey Division of Youth and Family Services, 144 F. App'x 213, 216 (3d Cir. 2005) (finding that the motion to dismiss was properly treated as a motion for summary judgment and documents outside the complaint were properly considered where plaintiff was on notice that the motion could alternatively be considered one for summary judgment).

v. Spratt, 768 F. Supp. 153, 158 (E.D. Pa. 1991), *rev'd in part on other grounds*, 969 F.2d 16 (3d Cir. 1992).

Clearly, "some evidence" supports the hearing examiner's decision to sanction Plaintiff in this case with respect to the misconduct reports.  See ECF Nos. 43-1 to 43-9.  Indeed, as pointed out by the DOC Defendants, Plaintiff pled guilty to using abusive language to an employee at three of the misconduct hearings and admitted at four other misconduct hearings that he attempted to kick Defendant Finley; that he knocked a cup of ginger ale off the table; that he "held his pie hole hostage;" that he said "fuck you" to Defendant Pluck and Poziviak; and that he accused Defendant Poziviak of being a "kleptomaniac" and high.  See ECF Nos. 43-1, p. 3; 43-2, p. 3; 43-3, p. 4; 43-4, p. 3; 43-5, p. 4; 43-6, p. 5; 43-8, p. 4; 43-9, p. 3.  Under these circumstances, Plaintiff's misconduct related claims are properly dismissed notwithstanding his failure to exhaust administrative remedies.

### 3.      First Amendment Retaliation Claims

Plaintiff purports to bring claims of retaliation under the First Amendment against Defendants Pluck, Yourkin, Poziviak, Shrader, Finley, Nelson, and Kulik.

In order to establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (the constitutionally protected conduct must be "a substantial or motivating factor" in the decision to discipline the inmate).  To constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Id.,

*quoting* Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Actions deemed sufficiently adverse to sustain such a claim in the prison context are those such as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to an institution whose distance made regular family visits impossible; suffering some sort of financial penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs. See Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012), *citing* Mitchell v. Horn, 318 F.3d at 530; Rauser v. Horn, 241 F.3d at 333. Conversely, verbal threats or harassment have been found insufficiently adverse to support a retaliation claim. Id.

A causal connection between the protected conduct and the adverse action may be established by showing that there is a temporal proximity between the plaintiff's protected activity and the defendant's adverse action. The timing of the alleged retaliatory conduct, however, must be suggestive of a retaliatory motive. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003), *citing* Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link).

If the plaintiff proves these three elements, the burden shifts to the state prison official to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating

factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

Plaintiff in this case contends that Defendants retaliated against him for filing a complaint at Civil Action No. 10-65, which Defendants do not dispute constitutes protected activity. They do dispute, however, whether Plaintiff has alleged sufficient facts to warrant a finding that their actions are sufficiently adverse for purposes of a First Amendment retaliation claim or that there is a causal connection between any of the actions complained of and Plaintiff having filed the prior complaint.

Although it is unclear from Plaintiff's Amended Complaint what actions taken by the Defendant's provide the basis for this First Amendment claims and what actions allegedly constitute Eighth Amendment violations, even a liberal reading of the Amended Complaint shows that the majority of the actions complained of by Plaintiff either do not rise to the level of an adverse action on their face or Plaintiff has failed to allege facts from which it could be inferred that the action was sufficiently adverse to sustain a First Amendment retaliation claim. These claims include Plaintiff's allegations that Defendants Pluck and Poziviak denied Plaintiff "a meal;" that Defendant Shrader did nothing when Plaintiff reported that he was denied the meal; that Defendant Finley "tampers" with Plaintiff's Kosher diet; that Defendant Nelson denied him "a meal" and denied him exercise for 1½ months; that Defendant Nelson confiscated

119 erotic photos from Plaintiff's cell; and that on September 9, 2010, Defendant Walker

"denied Plaintiff medical care."  ECF No. 33, ¶¶ 16, 28, 51, 53, 54, 58, 68.  Because these

actions are without any factual support and/or would not deter a person of ordinary firmness

from exercising his constitutional rights, they cannot provide the basis for Plaintiff's retaliation

claims.  Rauser v. Horn, 241 F.3d at 333.  See Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir.

2009) (urinalysis, harassment, threats, temporary inconveniences, single incident of food

tampering, and denial of recreation did not rise to level of adverse action against prisoner);

Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008) (finding that the two incidents when

the plaintiff was given an alternative meal were not sufficiently severe to amount to a

constitutional violation); Potter v. Fraser, 2011 WL 2446642, at *8 (D.N.J. June 13, 2011)

(finding that plaintiff's allegations that certain defendants searched his cell on two occasions,

threw his t-shirt in the garbage, and confiscated his commissary purchases, in retaliation for

filing grievances, were not sufficiently adverse actions).

  Arguably, however, Plaintiff's claims that Defendants Pluck and Yourkin labeled

Plaintiff as a "rat;" that Defendants Pluck and Nunez "billed" Plaintiff $25.00, $19.70 of which

was deducted from Plaintiff's account for "cleaning and sanitizing;" and that Defendants Pluck,

Yourkin, Poziviak, Shrader, Finley, Nelson and Kulik filed bogus misconducts against Plaintiff,

constitute adverse actions for purposes of a First Amendment claim.  See ECF No. 33, ¶¶ 2, 3,

10, 11, 14, 17, 22, 23, 26, 27, 52, 53, 56, 63, 75, 77.  It is nevertheless apparent from the

Amended Complaint that Plaintiff has failed to plead any facts from which it could be inferred

that there is a causal connection between any of these actions and the fact that Plaintiff filed a

lawsuit at Civil Action No. 10-65.

Significantly, only Pluck, Yourkin and Nunez are named as defendants in Civil Action No. 10-65. As such, Plaintiff's failure to allege any facts that would suggest that any of the other DOC Defendants were aware that the suit had been filed is fatal to his claims against Poziviak, Shrader, Finley, Nelson and Kulik. Moreover, almost all of the conduct complained of by Plaintiff in this case appears to pre-date the service of the complaint in Civil Action No. 10-65, which did not occur until September 1, 2010, at the earliest. See Civil Action No. 10-65: ECF Nos. 15, 16, 18. Indeed, according to the Amended Complaint, Pluck called Plaintiff a rat on August 9, 2010; Yourkin called Plaintiff a rat sometime around July 28, 2010; and Nunez and Pluck conspired to bill Plaintiff for cleaning and sanitizing his cell pursuant to a misconduct that was issued on August 9, 2010, and followed by a misconduct hearing held on August 11, 2010. ECF No. 33, ¶¶ 8-10, 23; ECF No. 43-3.

Similarly, four of the nine allegedly bogus misconducts were filed against Plaintiff before the complaint in Civil Action No. 10-65 was served on Defendants and two of those misconducts were filed by Defendant Finley who was not named as a defendant in Civil Action No. 10-65. See ECF Nos. 43-1, 43-2, 43-3, 43-4. Of the remaining five misconducts, one was filed on November 4, 2010, by Defendant Nelson and the one on November 26, 2010, by Defendant Kulik. See ECF Nos. 43-8; 43-9. Not only were neither of these Defendants named in the earlier suit but having been filed almost three months after the complaint in Civil Action No. 10-65 was served, it cannot be said that the temporal proximity between the two events is unduly suggestive of a retaliatory motive. See Brown v. Varner, 2013 WL 4591817, at *14-15 (M.D. Pa. Aug. 28, 2013).

All three of the remaining misconducts at issue were filed on September 3, 2010, which was arguably after the complaint at Civil Action No. 10-65 was served on the defendants in that

case.  See ECF Nos. 43-5, 43-6, 43-7.   Two of those misconducts, however, were filed by

Defendants Poziviak and Shrader who were not named as defendants in Civil Action No. 10-65.

ECF Nos. 43-6; 43-7.  Absent any factual allegations that either Poziviak or Shrader were aware

that the suit had been filed, Plaintiff has failed to show that there is a causal connection between

the two events.

The single remaining misconduct citied by Plaintiff is No. B 268222, which was filed by

Defendant Pluck on September 3, 2010, three days after the complaint in Civil Action No. 10-65

was arguably served on him.  See ECF No. 43-5.  Although the temporal proximity is indicative

of a causal connection between the two events, the United States Court of Appeals for the Third

Circuit has held that a finding of guilt of the underlying misconduct necessarily establishes that

the same action would have been taken even if the plaintiff had not engaged in the protected

activity and precludes a finding that the misconduct was issued in order to retaliate against him.

Bonaparte v. Beck, 441 F. App'x 830, 832-33 (3d Cir. 2011); Nifas v. Beard, 374 F. App'x 241,

244 (3d Cir. 2010); Williams v. Sebek, 299 F. App'x 104, 106 (3d Cir. 2008).  See Israel v.

Superintendent of S.C.I. Fayette, 2009 WL 693248, at *11 (W.D. Pa. Mar. 13, 2009).  See also

Harris-Debardelaben v. Johnson, 1997 WL 434357, at *1 (6th Cir. July 31, 1997) (the finding of

guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he

would have brought the misconduct charge even if plaintiff had not filed a grievance);

Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilt based on some evidence

"essentially checkmates [the] retaliation claim").

Because Plaintiff was found guilty of misconduct B 268222 issued by Defendant Pluck --

in fact, plead guilty to using abusive language to an employee -- it necessarily establishes that the

same action would have been taken regardless of any protected activity engaged in by Plaintiff

and precludes a finding that the misconduct was issued by Defendant Pluck in order to retaliate against Plaintiff. See ECF No. 43-5. Accordingly, the DOC's Motion to Dismiss with respect to Plaintiff's First Amendment retaliation claims will be granted.

### 4. Eighth Amendment Claims[5]

In order to establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. at 832 (citations omitted). See Hudson v. McMillian, 503 U.S. 1, 9 (1992), quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981), and Wilson v. Seiter, 501 U.S. at 298 ("[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' . . . 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation'"). The prisoner must also show that the prison official acted with a sufficiently culpable state of mind or deliberate indifference. Farmer v. Brennan, 511 U.S. at 834. See Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

As with Plaintiff's First Amendment claims, it is clear from the Amended Complaint that most of the deprivations of which Plaintiff complains either fail on their face to establish a sufficiently grave deprivation for purposes of an Eighth Amendment violation or Plaintiff has failed to allege facts from which it could be inferred that Defendants acted with a culpable state of mind. Those allegations include Plaintiff's claims that on July 27, 2010, Defendants Pluck and Yourkin denied him "adequate bedding;" that on July 28, 2010, Pluck and Yourkin moved Plaintiff to a neighboring cell that had feces on the walls and ceiling, a clogged toilet and broken

---

[5] To the extent that Plaintiff has brought Fourteenth Amendment claims against the DOC Defendants based on the same facts and/or conduct as his Eighth Amendment claims, they are properly dismissed as duplicative of his Eighth Amendment claims. Betts v. New Castle Youth Dev. Ctr., 621 F.3d at 260.

sink, while Plaintiff's cell, which had been flooded, was being cleaned; that Plaintiff was "denied medication" (presumable by Pluck); that Pluck made a rude and harassing comment to Plaintiff when Pluck was returning Plaintiff's laundry to him; that Pluck denied Plaintiff "a shower" and "a meal" on August 9, 2010, and again on September 3, 2010; that Defendant Shrader did nothing when Plaintiff complained about the missed meals; that Defendant Nelson denied him exercise for six weeks in conjunction with a misconduct, denied him "a meal" on November 22, 2010, and November 26, 2010, and confiscated erotic photos from Plaintiff's cell; that Nelson and Defendant Kulik "tampered" with Plaintiff's mail and that of other inmates by "by taking it off the tier instead of using the tier mailbox;" and that Defendant Finley denied Plaintiff a liquid diet on July 23, 2010, and once threw a piece of ice in Plaintiff's face.  ECF No. 33, ¶¶ 4, 7, 8-9, 11-12, 15-16, 49-51, 53, 57-58, 69, 73.  See Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006) ("[i]t is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment"); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that denial of outdoor recreation for thirteen days not cruel and unusual punishment); Rodriguez v. Baeli, 2011 WL 42998, at *1 (D.N.J. Jan. 5, 2011), quoting Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) ("[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents);  Robinson v. Danberg, 729 F. Supp. 2d 666, 678-79 (D. Del. 2010); Frazier v. Daniels, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010) (conduct such as denial of dinner on occasion or verbal antagonizing of plaintiff did not constitute adverse action); Moore v. Shaw, 2005 WL 1514181, at * 3 (D.N.J. June 27, 2005), quoting Bell v. Wolfish, 441 U.S. 520, 542 (1979) ("conditions of imprisonment do not generally reach the threshold of constitutional concern until a showing is made of 'genuine privations of hardship over an extended period of time'").  See also Burgos v. Canino, 358 F. App'x at 307

(harassment, temporary inconveniences, single incident of food tampering, and denial of recreation did not rise to level of adverse action against prisoner); Walker v. Bowersox, 526 F.3d at 1190 (giving the plaintiff "an alternative meal" was not sufficiently severe to amount to a constitutional violation"); Morris v. Powell, 449 F.3d at 685–86 (one day spent in an unpleasant room was not sufficiently adverse to constitute an adverse action); Potter v. Fraser, 2011 WL 2446642, at *8 (finding that plaintiff's allegations that certain defendants searched his cell on two occasions and confiscated his commissary purchases were not adverse actions).

Plaintiff's references to other conduct that allegedly violated his rights provided by the Eighth Amendment, however, warrant further discussion.

### a.    Claims against Against Defendants Kostlenik and Krak

As previously discussed, in order to establish an Eighth Amendment violation with respect to inadequate medical treatment, a plaintiff must demonstrate: (1) a serious medical need or one such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death; and (2) that the defendants were deliberately indifferent to that need which requires both an objective showing that the deprivation was sufficiently serious and a subjective showing that defendant acted with a sufficiently culpable state of mind.  See Spruill v. Gillis, 372 F.3d at 235; Montgomery v. Pinchak, 294 F.3d at 499.  Disagreements regarding medical diagnoses or proper treatment and short delays in treatment do not amount to cruel and unusual punishment.  Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689, at * 9 (D.N.J. June 13, 2012).  Nor do allegations of negligence or medical malpractice.  See Spruill v. Gillis, 372 F.3d at 235.

Here, the only assertions in the Amended Complaint relative to Defendants Krak and Kostlenik, two DOC dentists, are that Plaintiff visited Kostlenik on July 9, 2010, to have a

wisdom tooth pulled and that it was broken in four parts.  ECF No. 33, ¶ 42.  Plaintiff apparently

returned on July 12, 2010, and was seen by Krak.  Id. at ¶¶ 30, 43.  According to Plaintiff, Krak

ground down what remained of the tooth and prescribed Ibuprofen.  Id. at ¶¶ 30, 31, 43.  Plaintiff

alleges that the Ibuprofen must be taken with food because he suffers from a bleeding ulcer and

that he consequently requested a liquid diet and Ensure, which neither Krak nor Kostlenik

prescribed.  Id. at ¶¶ 31, 32, 42.  Plaintiff alleges that when he returned a third time on July 23,

2010, for a final "tooth grinding," Kostlenik prescribed the liquid diet for him.  Id. at 44.

Because neither Krak nor Kostlenik prescribed the liquid diet for two weeks, Plaintiff claims he

was denied medical care.  Id. at ¶¶ 31-33, 43.

These assertions fail to state an Eighth Amendment claim.  Even if it could be said that

Plaintiff suffered from a serious medical need, it is clear from the Amended Complaint that Krak

and Kostlenik did, in fact, provide Plaintiff with medical care having treated his tooth on three

occasions, provided him with pain medication and ultimately with a liquid diet.  The fact that the

liquid diet was not provided for several weeks does not evidence deliberate indifference to a

serious medical need.  Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL

2374689, at * 9.  At best, Plaintiff's claims sound in negligence which does not rise to the level

of an Eighth Amendment violation.  See Spruill v. Gillis, 372 F.3d at 235.

### b.  Claim Against Defendant Walker

With respect to Defendant Walker, Plaintiff has alleged in the Amended Complaint only

that Walker continued to serve him BMMs for six more meals after Defendant Jinn informed

Walker that Plaintiff was allergic to carrots.  ECF No. 33, ¶ 54.

In order to establish an Eighth Amendment violation with respect to conditions of

confinement, a prisoner must show that he has been deprived of "the minimal civilized measure

of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. at 832 (citations omitted).  Accordingly, "[t]he Eighth Amendment requires that prison officials serve 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"  Gregory v. Danberg, 2011 WL 4480445, at *5-6, *quoting* Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980).  See Duran v. Merline, 923 F. Supp. 2d 702, 720 (D.N.J. 2013).  The United States Court of Appeals for the Third Circuit therefore has recognized that "only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim."  Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009), *citing* Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).

Corrections officials, however, may not be held liable for failing to provide an inmate with nutritionally adequate food unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind).  Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007), *citing* Wilson v. Seiter, 501 U.S. at 298.  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation."  Duran v. Merline, 2013 WL 504582, at *9, *quoting* Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (internal citation omitted).  See Robles v. Coughlin, 725 F.2d at 15.

In this case, merely alleging that Walker continued to give Plaintiff BMMs containing carrots on six occasions after Defendant Jinn informed Walker of Plaintiff's allergy, falls short of stating an Eighth Amendment claim.  This is particularly true as Plaintiff has failed to indicate whether he receives any other food along with the BMMs, when the six meals were given to him in relation to other meals, or that he has suffered any effects of a prolonged and nutritionally

28

inadequate diet because he is unable to eat the BMMs.  See Gregory v. Danberg, 2011 WL 4480445, at *5-6; Brown v. Martinez, 2007 WL 2225842, at *8.  Consequently, Plaintiff's Eighth Amendment claim against Defendant Walker will be dismissed.

      **C.**    **Miscellaneous Eighth Amendment Claims**

      Although the DOC Defendants acknowledge that Plaintiff has raised several other Eighth Amendment claims in the Amended Complaint, the DOC Defendants have not moved for their dismissal or otherwise addressed these claims in their Brief in Support of Motion to Dismiss. See ECF No. 44.  This notwithstanding, as discussed below, only those claims brought against Defendants Finley and Honsauer are sufficient to survive a motion to dismiss.

      **1.**    **Claims Against Defendants Pluck and Yourkin**

      Plaintiff has alleged in the Amended Complaint that "Pluck labels Plaintiff 'you's a rat,'" and that Yourkin "endangered Plaintiff by yelling 'you's a rat.'"  ECF No. 33, ¶¶ 3, 23.

      The United States Supreme Court has held that, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. at 833.  "Labeling an inmate a snitch may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." Tabb v. Hannah, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012).  An inmate must show (1) that the prison conditions posed a substantial risk of serious harm and (2) that prison officials were deliberately indifferent to the inmate's safety.  Id. citing Farmer v. Brennan, 511 U.S. at 834.  Prison officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also actually draw the inference before deliberate indifference will be found.  Id., citing Farmer v. Brennan, 511 U.S. at 837.

Plaintiff in this case, however, has not alleged where Pluck or Yourkin made these statements, if other inmates were in the vicinity or who, if anyone, may have heard the statements.  Under these circumstances, it cannot be determined from the face of the Amended Complaint, absent speculation, that either statement posed a substantial risk of harm to Plaintiff, that Defendants Pluck and Yourkin were aware of facts from which it could be inferred that a substantial risk of serious harm existed, or that they actually drew the inference.  Accordingly, Plaintiff's Eighth Amendment claims against Pluck and Yourkin for simply calling him a rat are properly dismissed.  See Jones v. Beard, 145 F. App'x. 743, 745–46 (3d Cir. 2005) (isolated comments were insufficient to show that the guards knew that inmate faced a substantial risk such that they could be considered deliberately indifferent to that risk).

2.      **Claim Against Defendant Finley**

Plaintiff alleges that on July 25, 2010, he was spitting up blood and "moving bloody bowel" because of a bleeding stomach ulcer and that Defendant Finley denied Plaintiff's request to see "medical," stating " I don't care.  Stick your thumb up your butt."  ECF No. 33, ¶¶ 70, 71. In this Court's view these assertions are sufficient to suggest that Plaintiff was suffering from an obvious and serious medical need to which Finley was arguably deliberately indifferent. Accordingly, Plaintiff's claim against Defendant Finley in this regard will be permitted to go forward.

3.      **Claim Against Defendant Honsauer**

Plaintiff alleges that on July 25, 2010, while he was receiving a blood transfusion and had one arm and one leg shackled to the hospital bed, Defendant Honsauer sprayed him in the face with mace causing severe burns on his face and torso and blindness for thirty minutes.   ECF No. 33, ¶¶ 59-62, 73-74.

The Eighth Amendment's prohibition on "cruel and unusual punishment" protects prisoners from the use of excessive force or the unnecessary and wanton infliction of pain that offends contemporary standards of decency by prison officials.  <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621 F.3d at 256; <u>Adderly v. Ferrier</u>, 419 F. App'x 135, 138 (3d Cir. 2011).  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 8–9 (1992).  When reviewing Eighth Amendment excessive force claims, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000), *citing* <u>Hudson v. McMillian</u>, 503 U.S. at 7.  To resolve the inquiry, Courts are to consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

<u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009).

Here, this Court finds that Plaintiff's allegations that he was shackled to the bed by one arm and one leg when Honsauer sprayed him with the mace and that is caused severe burns and blindness are sufficient to withstand scrutiny under <u>Twombly</u> and <u>Iqbal</u>.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Amended Complaint submitted on behalf of the Medical Defendants, ECF No. 39, will be granted, and the partial Motion to Dismiss Amended Complaint submitted on behalf of the DOC Defendants, ECF No. 43, treated as a Motion for Summary Judgment with respect to the issue of exhaustion, will granted as well.  The Court will also dismiss Plaintiff's Eighth Amendment claims brought against Defendants Pluck and Poziviak as discussed above.  Thus, only Plaintiff's Eighth

Amendment claims brought against Defendants Finley and Honsauer relative to the denial of medical treatment on July 23, 2010, and the use of excessive force on July 25, 2010, respectively, remaining for adjudication.

An appropriate Order will follow.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated:  5 September, 2013

cc:     Joseph Laurensau
        DS-8331
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426

        All counsel of record by Notice of Electronic Filing