IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH LAURENSAU, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 12-623 |
| ) | Chief Magistrate Judge Maureen P. Kelly |
| CHARLES PLUCK *COI;* RONALD ) | |
| YOURKIN*;* LYLE POZIVIAN,*COI;* ) | |
| WILLIAM SHRADER *COIII;* GARRET ) | |
| FINLEY *COI*; GERALD HONSAUER; ) | |
| ROBERT NELSON; ANTHONY KULIK*;* ) | |
| PAUL WALKER; DR. JINN; DR. ) | |
| CELESTE KOSTLENIK; DR. MICHELLE ) | Re: ECF No. 64 |
| LUCAS; DR. ROBERT KRAK; ) | |
| FERNANDO NUNEZ, ) | |
| Defendants. ) | |

## OPINION

**KELLY, Chief Magistrate Judge**

Plaintiff Joseph Laurensau ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution ("SCI") at Graterford. Plaintiff has brought this civil rights suit pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants Garret Finley ("Finley"), and Gerald Honsauer ("Honsauer") (collectively, "Defendants") violated his rights provided by the Eighth Amendment to the United States Constitution in July of 2010 while he was incarcerated at SCI Greene.[1]

Presently before the Court is a Motion for Summary Judgment ("the Motion") that was submitted by Defendants on March 6, 2014. ECF No. 64. On May 12, 2014, Plaintiff filed a

---

[1] In the Amended Complaint, which was filed on January 29, 2013 and remains the operative complaint, Plaintiff brought a myriad of claims against fourteen different defendants alleging that they violated his rights provided by the First, Fifth, Eighth and Fourteenth Amendments to the Constitution. Following the disposition of the Motions to Dismiss submitted by Defendants, however, only the Eighth Amendment claims brought against Defendants Finley and Honsauer remain in the case. See ECF No. 49.

Brief in Opposition to the Motion, a Declaration in Opposition to the Motion, a Counterstatement of Facts, and an Appendix to Brief in Opposition.  ECF Nos. 73-76.  The Motion therefore is ripe for review.  For the reasons that follow, the Motion will be granted.

I.      **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof").  Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. at 322.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

**II.    DISCUSSION**

Plaintiff has brought his claims pursuant to Section 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423. Here, as previously discussed, Plaintiff alleges that Defendants violated his rights provided by the Eighth Amendment to the Constitution.

3

A.  **Claim against Defendant Finley**

Plaintiff alleges that Finley violated his rights provided by the Eighth Amendment on July 23, 2010, when Finley denied Plaintiff's request for medical care after Plaintiff reported that he had blood in his stool and in his saliva. ECF No. 33: p. 12, ¶ 70.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. It therefore has been held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

To constitute a serious medical need, "[t]he detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). In addition, "the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id., *quoting* Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991). See Farmer v.

Brennan, 511 U.S. 825, 837 (1994) (A prison official violates the Eighth Amendment when he disregards an excessive risk to inmate health or safety). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. at 837.

In the instant case, it is undisputed that Plaintiff had a wisdom tooth pulled on July 9, 2010, and that he returned to the dentist on July 12, 2010, to have what remained of the tooth ground down. ECF No. 33: ¶¶ 30, 42; ECF No. 67-1: p. 21. Although Plaintiff claims he requested a liquid diet at that time because of his difficulty chewing after his tooth was pulled, the dentist declined to prescribe a liquid diet for Plaintiff until July 23, 2010, when he returned to the dentist a third time for a final "tooth grinding." ECF No. 33: ¶¶ 33, 43, 44, 69; ECF No. 67-1: p. 22. It appears that Plaintiff was also prescribed Ibuprofen and Motrin which Plaintiff claims had to be taken with food because he suffers from a bleeding ulcer. ECF No. 33: ¶¶ 31-32; ECF No. 67-1: p. 22.

It is also undisputed that on July 23, 2010 -- the same day that Plaintiff was prescribed the liquid diet -- Defendant Finley worked the 2-10 p.m. shift on I block, B pod in the Restricted Housing Unit ("RHU") where Plaintiff was housed. ECF No. 67-1: pp. 5, 8. Although Plaintiff claims that Finley "denied" him a liquid diet, Finley has attested to the fact -- and there is no evidence to the contrary -- that Plaintiff's meals are provided by dining services and that Finley has no control over the type of meals that Plaintiff is served.[2] ECF No. 67-2: p. 86, ¶ 4.

---

[2] Finley also contends that he could not have served Plaintiff a meal at 1400 (2:00 p.m.) on July 23, 2010, as Plaintiff has alleged, because that is the beginning of a shift and not a meal time. Plaintiff, however, has alleged that the meal was served at 1600 (4:00 p.m.) and not 1400. ECF No. 67-2: p. 86, ¶ 3. While it is not clear whether 1600 is a meal time, it does not alter the undisputed evidence that dining services, and not Finley, is responsible for providing Plaintiff with his meals. Id. at ¶ 4.

5

This notwithstanding, Plaintiff contends that at 2000 (8:00 p.m.) he discovered blood in his stool and saliva, which he had not experienced previously, and informed Finley.³ ECF No. 67-1: pp. 57-58, 61-62. When Plaintiff requested to see "medical," Finley allegedly responded, "I don't care. Stick your thumb up your butt." ECF No. 67-1: p. 57. Although Finley disputes that Plaintiff ever told him about the blood in his stool and spit or that Plaintiff requested medical treatment, the disputes are immaterial. Not only is having blood in one's spit following a dental procedure not unusual, but having blood in one's stool on a single occasion does not, standing alone, suggest that Plaintiff was suffering from a serious medical need, *i.e.*, one that could lead to substantial suffering, injury or death. See Johnson v. Sisto, 2012 WL 1622348, at *5 (E.D. Cal. May 8, 2012), *Report and Recommendation adopted by*, 2012 WL 4468444 (E.D. Cal. Sept. 26, 2012) ("blood in the stool, without more, fails to rise to the level of serious medical need. Indeed, blood in the stool can be the result of hemorrhoids"); Ford v. Phillips, 2007 WL 946703, at *12 & n.70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, and blood in his urine for a few weeks did not constitute a sufficiently serious condition giving rise to a medical indifference claim).

Moreover, there no evidence that Finley, who is a corrections officer and not a doctor, was conscious of even the possibility that a substantial risk of harm existed to Plaintiff because of the blood in his stool or that Finley actually drew the inference that Plaintiff was at risk of substantial harm but nevertheless declined to seek medical attention for him. See Wilson v. Burks, 423 F. App'x at 173 ("the official must both be aware of facts from which the inference

---

³ Notably, Plaintiff did not report the blood in his stool and saliva to anyone prior to telling Finley, including the nurse who had made rounds only one-half hour earlier. ECF No. 67-1: pp. 60, 62. Moreover, although Plaintiff contends that he also complained that evening to C.O. Hillen about the blood in his stool, Officer Hillen has no recollection of Plaintiff's complaints, nor does Lt. Kelly, who was also on the 2-10 shift in the RHU that evening. ECF No. 67-1: p. 61; ECF No. 67-2: p. 89, ¶¶ 2-4; p. 92, ¶¶ 2-4. In addition, although Plaintiff states that he did not use the intercom in his cell to report his medical situation because it was "cut off," the evidence of record shows that the intercoms are used for emergency situations and are never turned off. ECF No. 67-2: p. 87, ¶ 6; p. 93, ¶ 6.

could be drawn that a substantial risk of serious harm exists and he must also draw the inference"). Indeed, Finley has stated that while he knew that Plaintiff had dental work done he was unaware that Plaintiff had any other medical problems including a stomach ulcer. ECF No. 67-1: p. 10, ¶ 6. Thus, no reasonable fact-finder could conclude that Finley was deliberately indifferent to a serious medical need.

Furthermore, the record shows that even if Finley was aware that Plaintiff had blood in his stool and saliva and considered it a serious medical need, Plaintiff would have received the same treatment that he ultimately ended up receiving, *i.e.*, a visit to the medical department the next morning. Defendants have submitted a declaration from Nedra Grego, a Registered Nurse Supervisor at SCI Greene, in which she states that "[a] one-time event of blood in his stools, or in his spit would not have been treated as an emergency. Rather, Inmate Laurensau would have been directed to submit a sick call request to be seen the next day." ECF No. 67-1: pp. 14-15, ¶ 4. In addition, Defendants have submitted a declaration from Dr. Byunghak Jin, a medical doctor and the Medical Director at SCI Greene, who has also attested to the fact that "[o]ne incident of blood in stool and bloody sputum after a dental procedure does not necessarily constitute a medical emergency. If inmate Laurensau had contacted medical staff that evening, he would have been told to submit a sick call request and would have been seen in the morning." ECF No. 67-2: pp. 95-96, ¶ 5. As it happened, Plaintiff was taken to the medical department the next morning at 6:40 a.m. following a "possible syncopal episode" or a momentary loss of consciousness. ECF No. 67-1: p. 15, ¶ 5; ECF No. 67-2: p. 96, ¶ 6. Although it is clear that Plaintiff reported the rectal bleeding and bloody saliva at that time, Plaintiff was subsequently transferred to the hospital because of his elevated blood sugar, the fainting spell and his

7

unexplained tachycardia and not because he had blood in his stool. ECF No. 67-2: p. 96, ¶ 7.[4]

Thus, as attested to by Dr. Jin, Plaintiff not only received the very treatment he would have received had Finley contacted the medical staff the previous evening, id. at ¶ 9, but Plaintiff has not alleged any facts or provided any evidence to support a finding that he suffered any harm as a result of the ten hour delay in being taken to the medical department. As this Court has previously observed:

> [a] delay in providing medical treatment ... does not rise to the level of a constitutional violation unless it results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (emphasis added). *See also Laughin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (claim based on delay of medical treatment cannot succeed absent medical evidence showing detrimental impact of delay); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (same). The Court of Appeals for the Third Circuit recognized this principle in *Brooks v. Kyler*, 204 F.3d 102, 105 n. 4 (3d Cir. 2000) (Fourteenth Amendment claim failed where prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment").

Phillips v. Rustin, 2009 WL 1688466, at *6 (W.D. Pa. June 17, 2009). Indeed, the Court in Phillips, found that there was no constitutional violation after medical treatment was delayed six days where there was no evidence that the plaintiff suffered any harm because of the delay. See Tilley v. Allegheny County Jail, 2010 WL 1664900, at *4 (W.D. Pa. 2010) (finding that the plaintiff is unlikely to succeed on the merits of his deliberate indifference claim based on a 12 hour delay in obtaining medical care where he alleged no further injury arising from the delay); Evans v. Rozum, 2009 WL 5064490, at *6 (W.D. Pa. 2009) (summary judgment granted on the plaintiff's Eighth Amendment deliberate indifference claim where he failed to adduce any evidence of harm caused by a 96 hour delay in providing him with bowel program supplies).

---

[4] Although not relevant to whether Defendant Finley was deliberately indifferent to a serious medical need, Plaintiff was diagnosed at the hospital with "a small antral ulcer, less than 0.3 centimeters in size without visible vessel or bleeding as well as mucosal edema and congestion consistent with distal esophagitis." ECF No. 67-1: p. 15, ¶ 6; ECF No. 67-2: p. 96, ¶ 8.

8

Under these circumstances, Plaintiff is unable to succeed on his Eighth Amendment claim against Defendant Finley and summary judgment in Finley's favor is properly granted.

### B. Claims against Defendant Honsauer

Plaintiff alleges that on July 25, 2010, while he was receiving a blood transfusion and had one arm and one leg shackled to a hospital bed, Defendant Honsauer sprayed him in the face with mace causing severe burns on his face and torso and blindness for thirty minutes. ECF No. 33: ¶¶ 59-62, 73-74.

The Eighth Amendment's prohibition on "cruel and unusual punishment" protects prisoners from the use of excessive force or the unnecessary and wanton infliction of pain that offends contemporary standards of decency by prison officials. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010); Adderly v. Ferrier, 419 F. App'x 135, 138 (3d Cir. 2011). See Hudson v. McMillian, 503 U.S. 1, 8–9 (1992). When reviewing Eighth Amendment excessive force claims, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), *citing* Hudson v. McMillian, 503 U.S. at 7. To resolve the inquiry, Courts are to consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009).

Here, the evidence shows that after Plaintiff was taken to the medical department at SCI Greene he was transferred to Southwest Regional Hospital for evaluation and ultimately received a blood transfusion there. Both Defendants Honsauer and Finley were assigned to guard Plaintiff

9

-- Honsauer was inside the hospital room with Plaintiff and Finley was assigned to the hallway outside of Plaintiff's room.[5] ECF No. 67-1: p. 11, ¶ 11. At some point, Finley came into Plaintiff's hospital room to get a drink at which time, according to Plaintiff, Finley flicked some ice on Plaintiff's face -- an accusation that Finley denies. ECF No. 67-1: p. 11, ¶ 11; pp. 64-65; ECF No. 74: p. 4, ¶ 16. Notwithstanding Plaintiff's accusation, Plaintiff acknowledged in his deposition testimony that that when Finley came into the room, Plaintiff accused Finley of "fucking with his food" and, despite being handcuffed by one arm and one leg to the hospital bed, Plaintiff threw urine from his plastic hospital-issued urinal onto both Defendants, and spit at Finley. ECF No. 67-1: pp. 64-66. See ECF No. 67-1: p. 11, ¶¶ 10, 11; p. 77, ¶¶ 3, 5; ECF No. 67-2: pp. 8, 18, 20, 28, 31, 57. It also appears that Plaintiff subsequently threatened to kill Finley and his family, and continued to throw things and be combative. ECF No. 67-1: p. 11, ¶ 12; ECF No, 67-2: pp. 8, 20, 31. Although Defendants immediately left the room after being dowsed with urine, Honsauer returned shortly thereafter to retrieve some security equipment. ECF No. 67-1: p. 11, ¶ 12; p. 78, ¶ 7. According to Plaintiff's own testimony, when Honsauer came back into the room, Plaintiff kicked Honsauer in the chest or stomach with his free leg and attempted to spit on him.[6] ECF No. 67-1: pp. 66-68. See ECF No. 67-1: p. 11, ¶ 12; p. 78, ¶ 7. It is undisputed that it was at that point that Honsauer sprayed Plaintiff with oleoresin capsicum (pepper spray) in order to bring Plaintiff under control. ECF No. 67-1: p. 12, ¶ 13; pp. 66-68; p.

---

[5] Although Plaintiff contends that Finley requested the assignment knowing that he would be guarding Plaintiff, thereby implying that Finley did so in order to ridicule or harass Plaintiff, there is no evidence in the record to support Plaintiff's conclusion. To the contrary, the undisputed record evidence shows that Finley merely signed up for overtime and, when asked if he would accept assignment to the hospital, he said yes and was assigned to the hospital by the scheduling Lieutenant. ECF No. 67-1: p. 11, ¶ 9; ECF No. 67-2: p. 18. Moreover, Finley has attested to the fact that he did not know that Plaintiff was the one in the hospital until he arrived there. ECF No. 67-1: p. 11, ¶ 9.

[6] Although Plaintiff testified that he kicked Honsauer one time in the chest or stomach area, according to Honsauer and Finley, Plaintiff kicked Honsauer twice in the face. ECF No. 67-1: p. 11, ¶ 12; p. 67; p. 78, ¶ 7. The differing accounts, however, are immaterial as Plaintiff concedes that he did, in fact, kick Honsauer when he returned to the room.

10

78, ¶ 8; ECF No. 67-2: pp. 32, 59. It is also undisputed that, other than a "show of force," the use of oleoresin capsicum is the lowest form of force listed on the DOC's sequential force continuum and that Plaintiff's eyes were washed out by a nurse within 30 minutes. ECF No. 67-1: p. 68; p. 78, ¶ 9; p. 124.

Under these circumstances, it is not difficult for this Court to find that Honsauer's use of force in this instance was more than warranted. Not only did Plaintiff assault these corrections officers by throwing urine at them, spitting at them and kicking Honsauer, but he did so in a public hospital with hospital personnel and other members of the public in the vicinity. Moreover, the use of force used by Honsauer was the lowest amount of force on the continuum and did not cause any lingering harm to Plaintiff.[7] Thus, it appears clear that Honsauer applied only such force as was necessary to control Plaintiff. Plaintiff therefore is unable to show that Honsauer's use of force was excessive and Honsauer is entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment submitted on behalf of Defendants, ECF No. 64, will be granted.

An appropriate Order will follow.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: December 1, 2014

---

[7] Furthermore, it is not without significance that Honsauer was well aware of Plaintiff's history of disturbances and other incidents and required close vigilance. ECF No. 67-1: p. 77, ¶ 4. Indeed, Defendants have submitted evidence that as of July 25, 2010, Plaintiff had incurred 70 separate misconducts, involving 163 separate charges -- 29 of which were for assault or aggravated assault -- since he has been incarcerated. ECF No. 67-1: pp. 80-94.

11

cc: Joseph Laurensau
DS-8331
SCI Graterford
P.O. Box 244
Graterford, PA 19426

All counsel of record via CM/ECF